UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AUSTYN MATTSON, SETH
MUSSELMAN, JASON RANDO
and DANIEL RIVERA,

       Plaintiffs,

v.                           Case No: 8:20-cv-1245-CEH-AEP

WTS INTERNATIONAL, INC.,

       Defendant.
_____/

## O R D E R

This matter comes before the Court on Defendant WTS International, Inc.'s Motion to Compel Arbitration (Doc. 16). Defendant requests the Court enter an Order compelling Plaintiffs to pursue their claims in binding arbitration. Plaintiffs filed a memorandum and affidavits in opposition contending they never knowingly signed an arbitration agreement or agreed to arbitrate. Doc. 18. The Court heard argument on November 16, 2020. At the hearing, Defendant WTS requested leave to file a reply to address the arguments raised in Plaintiffs' response, which the Court granted. Following the hearing, Defendant filed the affidavit of Marco Chavez, Defendant's system administrator for its electronic onboarding platform for employees. Doc. 30. Plaintiffs filed a response to the Chavez affidavit. Doc. 34. The Court, having considered the motion, heard argument of counsel, and being fully advised in the premises, will grant Defendant's Motion to Compel Arbitration.

# BACKGROUND

## A.    Plaintiffs' Claims

Plaintiffs, Austyn Mattson ("Mattson"), Seth Musselman ("Musselman"), Jason Rando ("Rando"), and Daniel Rivera ("Rivera") (collectively "Plaintiffs"), are four bartenders formerly employed by Defendant, WTS International, Inc. ("WTS"). Doc. 12.  WTS is a corporation organized under the laws of Washington, D.C., with its principal place of business in Rockville, Maryland. *Id.* ¶ 16. On May 29, 2020, Plaintiffs filed this action against WTS. Doc. 1. On July 14, 2020, Plaintiffs filed a three-count Amended Complaint against WTS, alleging tortious interference, defamation *per se*, and declaratory relief, arising out of their termination and WTS's subsequent attempts to block Plaintiffs from seeking employment elsewhere due to non-compete agreements purportedly signed by Plaintiffs when they were hired by WTS. Doc. 12.

Plaintiffs allege that The Lagoon at Epperson ("Epperson") is a master planned community by Metro Development Group doing business as Metro Places ("Metro Places") located in Wesley Chapel, Florida. *Id.* ¶ 20. Epperson contains a number of amenities for its residents, including two bars: The Sandbar and the Cabana Bar, which Defendant WTS managed. *Id.* ¶¶ 21, 22. In March 2020, Metro Places gave notice to WTS of its intent to terminate their business relationship. *Id.* ¶ 23. During the same time, as a result of the COVID-19 pandemic, WTS laid off its bar staff, including Plaintiffs, at the Epperson location. *Id.* ¶ 24. On March 18, 2020, WTS advised

2

Plaintiffs not to report to work until further notice. *Id.* ¶ 25. WTS also informed Plaintiffs that they were contractually prohibited from working in the Epperson Community. *Id.*

After Metro Places terminated its relationship with WTS, Metro Places engaged a new company to plan for reopening and to operate the bars and restaurants. *Id.* ¶ 38. When Plaintiffs heard that the bars were under new management and would be hiring, they inquired about employment. *Id.* ¶ 41. When WTS learned that Plaintiffs were inquiring about employment, WTS told Metro Places and the new management company that Plaintiffs were subject to non-compete agreements and demanded that Metro Places or the new management company pay a fee to "buy out" the Plaintiffs' non-compete agreements. *Id.* ¶¶ 42–44. By the terms of the proposed non-compete agreements, Plaintiffs were restricted from working for any bar/establishment located within Epperson community, from working for any bar/restaurant affiliated with Metro Places, and restricted from providing any services to customers Plaintiffs served while working in Epperson community. *Id.* ¶ 48. Plaintiffs deny signing or accepting the non-compete agreements. *Id.* ¶ 46.

## B.   Motion to Compel and Response

WTS contends that Plaintiffs signed binding arbitration agreements when they were hired. WTS attaches to its motion four arbitration agreements, each one containing an electronic signature of one of the four Plaintiffs along with a date and time next to each individual's name. Doc. 16-1. WTS submits that the arbitration agreements are valid under Florida law, and it argues that the agreements are not

procedurally or substantively unconscionable. WTS contends that Plaintiffs' claims fall squarely within the claims covered by the arbitration agreement, which requires arbitration of claims related in any manner to the individual's employment, including "claims or charges based upon federal or state statutes;" "claims based upon tort or contract laws or common law;" and claims based upon "any other federal or state or local law affecting employment in any manner whatsoever." *See e.g.,* Doc. 16-1 at 1. WTS requests this Court dismiss, rather than stay, Plaintiffs' claims and compel Plaintiffs to pursue their claims through arbitration.

Plaintiffs respond in opposition, arguing they never knowingly signed an arbitration agreement. Doc. 18. Plaintiffs each submit an affidavit in opposition to the motion to compel stating the Plaintiff:

- was previously employed by WTS International, Inc.
- never signed an arbitration agreement with WTS in pen and on paper
- never knowingly signed an arbitration agreement with WTS electronically
- has no recollection of ever checking a box on a document agreeing to arbitrate any disputes with WTS
- never received a copy of any arbitration agreement with WTS and does not have a copy of any such document
- was never advised that he would have to sign an arbitration agreement as a condition of employment with WTS
- would have exercised the right to reject the arbitration agreement if he had signed the agreement and been aware of its terms

Doc. 18-1 at 1–4.

In their response, Plaintiffs argue the authenticity of the arbitration agreements is suspect, and they criticize WTS's failure to use a more secure system that would imprint an electronic document with data such as unique digital signatures or IP addresses. Plaintiffs hypothesize that it is just as likely that WTS personnel

4

electronically checked the boxes acknowledging and signing the arbitration agreements. Although Plaintiffs do not explicitly argue waiver, they further contend arbitration was never raised by WTS until the day its response to the amended complaint was due.

WTS replied by filing the affidavit of Marco Chavez, ("Chavez") WTS's asset manager who serves as the system administrator for iCIMS, which is the online recruitment platform WTS uses to recruit, hire, train, and onboard all incoming employees. Doc. 30. Chavez declares that WTS has used the iCIMS platform for ten years, and the only way a potential job candidate becomes employed by WTS is through the iCIMS system. *Id.* ¶¶ 3, 4. When a candidate applies for a job, the candidate is required to enter an email address, and then the candidate creates a unique profile with a username, password, and contact information. *Id.* ¶ 5. After creating a profile, the candidate completes the employment application and must select the "I Accept" checkbox at the bottom of the application in order to submit the application. *Id.* The form explains that "[b]y checking the box above you are applying your signature . . . ." *Id.* If WTS chooses to hire the candidate, the candidate will receive a link to access an offer letter in iCIMS using the same username and password created by the candidate when applying. *Id.* If at any time the potential job candidate wants to change the username and/or password, they are able to do so from the iCIMS Dashboard by selecting update profile or requesting a password reset by WTS. *Id.* If a reset is requested, the candidate is sent a form email with a generic password and instructions to reset the password to one of their choice. *Id.*

A candidate who chooses to accept the job offer is given the ability to review the electronic offer letter in iCIMS and accept via electronic signature. *Id.* To accept, the candidate is directed to check two separate boxes at the bottom of the application and submit the offer letter by choosing the button labeled "sign & submit." *Id.* After the candidate accepts the offer letter, WTS is notified of the acceptance through iCIMS. *Id.* WTS then sends a link to the candidate to access the onboarding materials in iCIMS using the same username and password. *Id.*

Once the candidate begins the onboarding process, the candidate must confirm his profile page information is accurate, and from there the candidate is directed to the "Welcome Aboard" page. *Id.* There are nine tasks that must be completed in order to complete the onboarding process. *Id.* Specifically, the candidate must review, complete, and accept, by checking the "I Accept" checkbox, the following: (1) direct deposit form; (2) drug test acknowledgement; (3) federal I9 form; (4) federal W4 form; (5) WTS employment application (if not already completed): (6) WTS restrictive covenants; (7) antiharassment acknowledgement; (8) WTS binding arbitration agreement; and (9) WTS handbook acknowledgement. *Id.* As a candidate completes each task, the onboarding page is updated accordingly. *Id.* The candidate must complete all nine tasks for the onboarding process to be completed, and the candidate will not be able to begin their employment with WTS until the onboarding process is complete. *Id.*

Chavez reviewed the iCIM records for Mattson, Musselman, Rando, and Rivera. *Id.* ¶ 6. He confirmed that Plaintiffs were employed in the State of Florida and

each signed an arbitration agreement before starting their employment with WTS. *Id.* Attached to his affidavit are screen shots of documents showing the onboarding process and documents created in iCIMS specific to each Plaintiff along with an audit trail of the document. Docs. 30-1–30-22.

Mattson's electronic signature appears on the arbitration agreement with the date and time of May 21, 2019 at 2:10 p.m. *Id.*; *see also* Doc. 30-15 at 3; Doc. 30-16. On the same date and around the same time, it appears Mattson electronically signed a non-solicitation agreement, a direct deposit waiver and enrollment form, and a WTS handbook acknowledgement form. Doc. 30-15 at 3–4.

Musselman's electronic signature appears on the arbitration agreement with the date and time of September 11, 2019 at 1:44 p.m. Doc. 30 ¶ 6.; *see also* Doc. 30-17 at 3; Doc. 30-18. On the same date and around the same time, it appears Musselman electronically signed a non-solicitation agreement, a direct deposit waiver and enrollment form, and a WTS handbook acknowledgement form. Doc. 30-17 at 3–4.

Rando's electronic signature appears on the arbitration agreement with the date and time of June 18, 2019 at 11:02 p.m. Doc. 30 ¶ 6.; *see also* Doc. 30-19 at 2; Doc. 30-20. On the same date and around the same time, it appears Rando electronically signed a non-solicitation agreement, a direct deposit waiver and enrollment form, and a WTS handbook acknowledgement form. Doc. 30-19 at 3–4.

Rivera's electronic signature appears on the arbitration agreement with the date and time of June 20, 2019 at 2:44 a.m. Doc. 30 ¶ 6.; *see also* Doc. 30-21 at 3; Doc. 30-22. On the same date and around the same time, it appears Rivera electronically signed

a non-solicitation agreement, a direct deposit waiver and enrollment form, and a WTS handbook acknowledgement form. Doc. 30-21 at 3–4.

The arbitration provision gives employees the option to opt out within thirty days of signing the agreement. Doc. 30 ¶ 7.WTS has no record of Plaintiffs opting out of their arbitration agreements. *Id.* ¶ 8.

Plaintiffs respond to the Chavez affidavit by arguing the affidavit is facially unreliable. Doc. 34. Specifically, Plaintiffs challenge the screenshots as being incomplete. Additionally, Plaintiffs contend the documents reveal WTS employee Austin Collett had access to Plaintiffs' onboarding materials and performed some edits. Regarding Plaintiff Rivera's electronic record, Plaintiffs question its accuracy given that certain documents were signed at 2:44 a.m. Additionally, it appears Rivera's password was changed multiple times in a 12-hour period, at 3:26 p.m. on the afternoon of June 19 and again on June 30 at 3:03 a.m. Plaintiffs submit these documents fail to prove that they signed the arbitration agreements. Plaintiffs request the Court deny WTS's motion to compel and try the issue of whether or not an agreement to arbitrate exists.

## C.    Arbitration Agreement

The Arbitration Agreement presented to the Plaintiffs in the onboarding process stated, in relevant part, as follows:

> **Binding Arbitration Agreement and Waiver of Jury Trial Policy**
> **(Applicant)**

This Agreement is entered into between WTS International, Inc. ("Company") and the undersigned applicant (hereinafter "Individual"). Excluding workers

compensation, unemployment compensation and any other claims which by law can only be resolved in other forums or which are expressly excluded herein, Company and Individual agree to resolve any and all disputes or claims related in any manner whatsoever as to Individual's employment, including, but not limited to, all claims beginning from the period of application through termination of employment at Company, by binding arbitration pursuant to the rules governing the resolution of employment disputes in effect at the time the claim was filed, currently known as the Employment Arbitration Rules and Mediation Procedures, of the American Arbitration Association (hereinafter "AAA"), available at www.adr.org . . . Disputes related to employment include, but are not limited to, claims or charges based upon federal or state statutes, including, but not limited to, the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, and any other civil rights statute, the Americans with Disabilities Act, the Family and Medical Leave Act, the Fair Labor Standards Act or other wage statutes, the WARN Act, claims based upon tort or contract laws or common law or any other federal or state or local law affecting employment in any manner whatsoever.  . . .

Individual understands that he/she will not be considered for employment by the Company unless he/she signs and agrees to be bound by this Agreement. Individual further understands that, as additional consideration for signing this Agreement, the Company agrees to pay all costs of arbitration charged by AAA, other than Individual's filing fees, and to be bound by the arbitration procedure set forth in this Agreement. . . .
. . .
Company and Individual expressly agree that the Federal Arbitration Act governs the enforceability of any and all of the arbitration provisions of this Agreement, and judgment upon the award rendered by the arbitrator(s) may be entered by any court having jurisdiction thereof. The Arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable.
. . .
If any claim is found not to be subject to this Agreement and the arbitration procedure, it shall be subject to a non-jury trial in the federal or state court that has jurisdiction over the matter at the courthouse closest to the site at which Individual was employed by the Company, provided the action is filed in a timely manner. The case will be heard by a judge without a jury because both parties agree to waive any right to seek or demand a jury trial and would prefer to have any dispute decided solely by a judge of the court.

The parties agree that this Agreement may be interpreted or modified to the extent necessary for it to be enforceable and to give effect to the parties' expressed intent to

create a valid and binding arbitration procedure to resolve all disputes not expressly excluded. . . .

Within 30 days after you sign this Agreement, you have the option to exclude yourself from the benefits of arbitration provided in this Agreement. The choice you make will stay in effect for the duration of your employment and afterwards. The form below serves as an election form if you choose not to be covered by arbitration. Whether to stay covered by arbitration or not is your own decision and will have no impact on any aspect on your employment with the Company. You should read all information including AAA's rules governing the arbitration and the attached form carefully.

**INDIVIDUAL AND COMPANY UNDERSTAND THAT, ABSENT THIS AGREEMENT, THEY WOULD HAVE THE RIGHT TO SUE EACH OTHER IN COURT, AND THE RIGHT TO A JURY TRIAL, BUT, BY EXECUTING THIS AGREEMENT, BOTH GIVE UP THOSE RIGHTS AND AGREE TO HAVE ALL EMPLOYMENT DISPUTES AS DESCRIBED ABOVE RESOLVED BY MANDATORY, FINAL AND BINDING ARBITRATION. ANY EMPLOYMENT RELATIONSHIP BETWEEN INDIVIDUAL AND COMPANY IS AT-WILL, AND NO OTHER INFERENCE IS TO BE DRAWN FROM THIS AGREEMENT.**

**By checking the box below you are applying your signature and you agree to the statement above.**
Individual's Signature: ☐ **I ACCEPT**

Doc. 16-1.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., codifies a "liberal federal policy favoring arbitration" and requires the courts to "rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625–26 (1985) (internal quotation marks omitted). The "principal purpose" of the FAA is to ensure "that private arbitration agreements are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

The Court must first determine whether "the making of the agreement for arbitration or the failure to comply therewith is . . . in issue." 9 U.S.C. § 4. If, under a "summary judgment-like standard," the district court concludes that there "is no genuine dispute as to any material fact concerning the formation of such an agreement," it "may conclude as a matter of law that [the] parties did or did not enter into an arbitration agreement." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017) (quoting *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (citation and quotation marks omitted)). When a genuine dispute exists, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

Similar to a traditional summary judgment motion, the Court's examination of substantive law determines which facts are material. *Burch*, 861 F.3d at 1346 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The "threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.'" *Burch*, 861 F.3d at 1346 (quoting *Bazemore*, 827 F.3d at 1329). Thus, just as "state law generally governs whether an enforceable contract exists," state law generally governs whether an enforceable "agreement to arbitrate exists" as well. *Burch*, 861 F.3d at 1346 (quoting *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005)). The parties agree that Florida law applies to this dispute. Doc. 16 at 5–8; Doc. 18 at 3–5.

The Court engages in a two-step inquiry in analyzing a motion to compel arbitration: first, the Court must determine if the parties agreed to arbitrate the dispute; and second, the Court must decide whether "legal constraints external to the parties'

agreement foreclosed arbitration." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004).

## DISCUSSION

WTS moves the Court for an order dismissing the complaint and compelling the parties to arbitrate pursuant to the agreements Plaintiffs signed when they were hired. Doc. 16. WTS's systems administrator Marco Chavez explained the electronic onboarding program Plaintiffs had to complete before being hired. Based on how the online platform worked, Plaintiffs would have had to acknowledge and agree to the arbitration provision in order to complete the onboarding process. Thus, WTS argues Plaintiffs would not have begun their employment had the online paperwork not been finalized and submitted. WTS submits a valid arbitration agreement exists.

Providing their own affidavits, Plaintiffs claim they did not sign a paper version of the arbitration agreement and did not knowingly sign an electronic version. Docs. 18-1 at 1–4. Of note, Plaintiffs do not deny that they electronically signed the arbitration agreements. Rather, in response to Chavez's affidavit, Plaintiffs argue the documentation is facially unreliable, incomplete, and shows that others besides Plaintiffs had access to their documents.  Doc. 34. As such, Plaintiffs suggest that it is "just as likely" that an WTS employee signed the arbitration agreement instead of Plaintiffs. Plaintiffs argue they did not agree to arbitrate their claims. For the reasons discussed below, the Court finds the Motion to Compel Arbitration is due to be granted.

Under Florida law, an arbitration agreement is valid if three questions are affirmatively answered: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005) (citing *Seifert v. U.S. Home Corp.*, 750 So.2d 633, 636 (Fla. 1999)). Here, only the first and third questions are at issue.

## A.   Whether a Valid Written Agreement to Arbitrate exists

To prove the existence of a contract under Florida law, the party seeking to enforce the contract must prove "offer, acceptance, consideration and sufficient specification of essential terms." *St. Joe Corp. v. McIver*, 875 So.2d 735, 381 (Fla. 2004). The Court must determine whether "the making of the agreement for arbitration or the failure to comply therewith is . . . in issue." 9 U.S.C. § 4. "It is . . . well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 288 (2010). "[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Bazemore*, 827 F.3d at 1329 (internal quotation marks omitted). Indeed, a court may not compel the parties to settle their dispute in arbitration in the absence of an arbitration agreement. *Id.*

First, there is no genuine dispute of material fact regarding WTS's offer, by presenting the Arbitration Agreement, to submit certain disputes between the individual Plaintiffs and WTS to arbitration. Chavez explains that WTS sends to a

13

potential job candidate a link to the onboarding documents in the iCIMS platform once an applicant accepts the offer of employment with WTS.  He further explains that the potential job applicant must review and specifically check the "I Accept" checkbox for each of the nine tasks in the onboarding process, including the WTS Binding Arbitration Agreement. The potential candidate is unable to complete the onboarding process or begin employment until he completes all nine tasks. Chavez confirms that the four Plaintiffs each completed the onboarding process, including electronically signing the arbitration agreement, and were employed by WTS. Plaintiffs do not dispute, generally or through evidence, that they went through the onboarding process or that they were employed by WTS.

Next, there is no genuine dispute of material fact with respect to the Agreement containing sufficient specification of its terms. "The definition of 'essential term' varies widely according to the nature and complexity of each transaction and is evaluated on a case-by-case basis." *Lanza v. Damian Carpentry, Inc.*, 6 So. 3d 674 (Fla. 1st DCA 2009). Review of the arbitration agreement at issue here reveals the Agreement specifically details that the individual and company are agreeing to submit to arbitration certain disputes and that the potential job applicant acknowledges that he or she will not be considered for employment unless the individual signs the Agreement. The Agreement explains the types of disputes which fall within the Agreement's scope. The Agreement provides for an opt-out provision within thirty days. The Agreement advises, in bold type, that utilizing arbitration to resolve the covered disputes results in the parties giving up any right that they may have to a jury

trial. Again, Plaintiffs do not dispute, generally or through evidence, that the Agreement contained sufficient specification of essential terms.

If the moving party shows the existence of an agreement, the burden shifts to the party opposing arbitration to "show that no valid contract existed." *Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1325 (S.D. Fla. 2016). To meet that burden, a non-moving party must "unequivocally deny that an agreement to arbitrate was reached and must offer some evidence to substantiate the denial." *Magnolia Capital Advisors v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008) (citation omitted).

Despite Plaintiffs' contentions to the contrary, Plaintiffs fail to show there is a genuine dispute of material fact regarding Plaintiffs' acceptance of the Agreement. "In Florida, it is well-settled that the offeror may specify the terms and manner of acceptance." *Dorward v. Macy's Inc.*, No. 2:10-CV-669-FTM-29, 2011 WL 2893118, at *9 (M.D. Fla. July 20, 2011) (Steele, J.) (citing *Kendel v. Pontious*, 261 So.2d 167, 170 (Fla.1972)). The arbitration agreement here provides that the job candidate accepts the Agreement by electronic signature and checking a box. Further, the Agreement provides that the individual may opt-out within thirty days and that the choice made will stay in effect for the duration of employment.  Accordingly, a party may manifest assent to an agreement to arbitrate by failing to opt out of the agreement within a specified time. *See, e.g., Day v. Persels & Assocs., LLC*, No. 8:10–CV–2463–T–33TGW, 2011 U.S. Dist. LEXIS 49231, at *11–12, 2011 WL 1770300 (M.D. Fla. May 9, 2011) (plaintiff assented to arbitration agreement when she failed to return an opt-out

rejection notice within the prescribed time); *Delano v. MasTec, Inc.*, No. 8:10–CV–320–T–27MAP, 2010 U.S. Dist. LEXIS 126793, 2010 WL 4809081 (M.D. Fla. Nov. 15, 2010) (binding arbitration agreement found where employees signed an acknowledgment form stating that they understood that they would be bound by the agreement unless they returned an opt-out form within thirty days).  Here, Plaintiffs electronically signed the Agreement and did not opt out.

Plaintiffs deny signing the Agreements on paper. But in Florida, electronic signatures are valid. *See Haire v. Fla. Dep't of Agric. & Consumer Servs.*, 870 So. 2d 774, 789 (Fla. 2004); *see also* Fla. Stat. § 668.004  ("an electronic signature may be used to sign a writing and shall have the same force and effect as a written signature"). Plaintiffs argue that WTS should have used a more secure system to obtain signatures, such as DocuSign, but in fact, no signature is required to satisfy the FAA's written agreement requirement. *BDO Seidman, LLP v. Bee*, 970 So. 2d 869, 874 (Fla. 4th DCA 2007). Plaintiffs additionally claim they did not knowingly sign an agreement to arbitrate, and if they had been aware of its terms, they would have rejected the Agreement within thirty days. It is well-established, however, that an individual who signs a contract is generally bound by it, and a party to a written contract cannot defend against its enforcement solely because he signed it without reading it.[1] *Kendall Imports, LLC*, 215 So. 3d at 100.

---

[1] Although not binding on this Court, the Court finds persuasive those cases in which courts recognize the mere assertion that one does not recall signing a document does not, by itself, create an issue of fact as to whether a signature on a document is valid—especially in the absence of any evidence the document was fabricated. *Gonder v. Dollar Tree Stores, Inc.*, 144 F.

Critically, Plaintiffs' response to Chavez's affidavit is that it is "just as likely" that a WTS employee signed the Agreement for them. Yet, Plaintiffs proffer no evidence to support this theory. To the contrary, the evidence shows that Plaintiffs had to complete all nine onboarding tasks before being hired, and if they failed to sign the arbitration agreement, they would not have been hired. It is undisputed Plaintiffs were hired. Further, Plaintiffs do not deny going through the online onboarding process. Each Plaintiff's electronic signature appears on multiple documents at or around the same time Plaintiffs electronically signed the binding arbitration agreements, and yet, Plaintiffs do not suggest that their signatures on the non-solicitation agreements, direct deposit waiver and enrollment forms, and WTS handbook acknowledgement forms are not theirs or that WTS likely signed those forms too.

Plaintiffs' affidavits in opposition to the Motion to Compel Arbitration—the only evidence that they provide in opposing the motion—are unavailing to show that a genuine dispute of material fact exists as to their acceptance of the arbitration agreement. The affidavits are devoid of any discussion of the onboarding process Plaintiffs had to complete before being hired. Significantly, Plaintiffs do not state that they did not sign the arbitration agreement, or that they timely chose to opt out of the Agreement. Plaintiffs offer nothing to support their denial beyond a lack of recollection and a vague theory. An analysis of the evidence provided by the parties under

---

Supp. 3d 522, 528 (S.D.N.Y. 2015); *see also Vardanyan v. Close–Up Intern., Inc.*, 315 F. App'x 315, 317 (2d Cir. 2009) (finding no issue of material fact as to the validity of acknowledgement where there was no indication the document was fabricated but the purported signatory claimed not to remember signing the document).

applicable law demonstrates that there is no genuine dispute of material fact regarding the parties' entry into the Agreement. As such, "the making of the agreement for arbitration or the failure to comply therewith is not in issue" and the Court need not summarily proceed to trial on such question. 9 U.S.C. § 4. The Court finds the parties agreed to arbitrate certain disputes.[2]

## B.  Whether the Right to Arbitration was Waived

Having determined a valid agreement to arbitrate exists, the Court turns next to whether there has been a waiver. Plaintiffs complain that WTS waited until the day its response to the amended complaint was due before raising the issue of arbitration. Doc. 18 at 2. To the extent Plaintiffs contend WTS waived its right to arbitrate, the Court finds the argument unpersuasive. "[T]he question of whether there has been waiver in the arbitration agreement context should be analyzed in much the same way as in any other contractual context. The essential question is whether, under the totality of the circumstances, the . . . party has acted inconsistently with the arbitration right." *Raymond James Fin. Servs., Inc.*, 896 So. 2d at 711 (citing *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966)). Similarly, the Eleventh Circuit has established a two-part test to determine whether a party has waived its right to arbitrate. "First, [the court must] decide if, 'under the totality of the circumstances,' the party 'has acted inconsistently with the arbitration right,' and, second, [the court] look[s] to see whether, by doing so, that party 'has in some way prejudiced the other

---

[2] Plaintiffs make no argument that their claims would not fall within the scope of arbitral claims under the Agreement.

party.'" *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315–16 (11th Cir. 2002) (quoting *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990)). Other than an initial request for extension of time to respond to the Plaintiffs' pleadings, WTS's first pleading was a motion to compel arbitration. WTS has not answered the Plaintiffs' Amended Complaint nor actively litigated the case apart from pursuing arbitration. From the outset of the litigation, WTS consistently contended that the parties' disputes are governed by the arbitration provision contained in the onboarding documents Plaintiffs signed when they were hired. Although WTS did not raise arbitration prior to Plaintiffs filing suit, the Court finds this has not significantly prejudiced Plaintiffs as Plaintiffs may still pursue their claims, but in arbitration, as opposed to before a jury. *See, e.g., Mitsubishi Motors Corp.*, 437 U.S. at 628 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."). In fact, Plaintiffs have stated they would willingly arbitrate their claims if WTS provided evidence of valid arbitration agreements. Doc. 18 at 5. Even though Plaintiffs question the validity of the arbitration agreements presented by WTS, Plaintiffs cannot assert prejudice where they otherwise claim to be willing to arbitrate. Under the totality of the circumstances, the Court finds WTS has not waived its right to arbitrate Plaintiffs' claims.

**C.     Dismissal or Stay of Case**

WTS submits this Court should dismiss, rather than stay, Plaintiffs' claims to be pursued in arbitration. Doc. 16 at 10.  The FAA provides, in relevant part, that, in

any lawsuit brought upon any issue that is "referable" to arbitration under an arbitration agreement, the Court, upon satisfaction that the issue is referrable to arbitration under such agreement, must stay the trial of the action on application of a party until such arbitration has been held under the terms of the agreement. 9 U.S.C. § 3. The Eleventh Circuit has highlighted the propriety of staying an action pending arbitration in accordance with this section. *See Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) ("The district court properly found that state law claims were subject to arbitration; but erred in dismissing the claims rather than staying them. Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration."); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) (stating that the "FAA's enforcement sections require a court to stay a proceeding where the issue in the proceeding 'is referable to arbitration'" under a written arbitration agreement). Accordingly, the Court finds a stay, rather than dismissal, is appropriate here.

## CONCLUSION

In sum, there is no genuine dispute of material fact regarding the formation of an agreement to arbitrate certain claims between the parties. WTS provides evidence demonstrating, among other things, that Plaintiffs received the arbitration agreement as part of the onboarding process, electronically signed the arbitration agreement as part of completing the process, and otherwise failed to opt-out of the Agreement in accordance with its terms. Plaintiffs fail to make a sufficient evidentiary showing in opposition to create a genuine dispute of material fact. The record is devoid of any

legal constraints foreclosing arbitration, and Plaintiffs' claims arising out of their employment with WTS fall within the arbitration agreement's scope. As such, Plaintiffs' claims must proceed in arbitration in accordance with the Agreement. Accordingly, it is

**ORDERED**:

1.     Defendant's Motion to Compel Arbitration (Doc. 16) is **GRANTED**. The parties shall submit all claims asserted in the Amended Complaint to arbitration in accordance with the Arbitration Agreement.

2.     This action is **STAYED** pending arbitration of Plaintiffs' claims.

3.     The parties shall file a notice informing the Court that the arbitration has concluded, or that their dispute has otherwise been resolved, within fourteen (14) days of either of such event.

4.     The Clerk is directed to terminate any pending motions and deadlines and administratively **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida on March 20, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any